UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN THE MATTER OF: | CASE NO. 18-10864 |
| VISION INVESTMENT GROUP, INC. | Chapter 11 |
| Debtor. | |

**PLAN OF REORGANIZATION**

This Plan is dated February 20, 2019.

Debtor submits the following Plan of Reorganization herein:

*Definitions*

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

*Allowed Amount or Allowed Claim* shall mean:

a.   with respect to any Administrative Claim, other than a current obligation, if the claim is based upon a fee application, the amount of such fee application that has been approved by a Final Order of the Bankruptcy Court; with respect to any current obligation, the amount of such claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court;

b.   with respect to a Tax Claim, the amount of such claim that has been agreed to by the Debtor and such creditor, failing which, the amount thereof as fixed by a Final Order of the Bankruptcy Court;

c.   with respect to any Priority Claim, Secured Claim, Unsecured Claim, or Subordinated Claim, (i) if the holder of such claim has not filed proof thereof with the Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules and a Final Order issued thereunder, the amount of such claim as listed in the Debtor's Schedules, as amended, as neither disputed, contingent or unliquidated; or (ii) if the holder of such claim has filed proof thereof with the Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules and a Final Order issued thereunder, (1) the amount stated in such proof if no objection to such Proof of Claim was interposed within applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (2) the amount thereof as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the

Bankruptcy Court or, such amount as agreed to between the Debtor and the Claimant as approved by Order of the Court.

*Allowed Claim*: shall mean any claim for which an allowed amount has been determined.

*Ballot Date*: shall mean the date set by the Bankruptcy Court as the last date for timely submission by a creditor or interest holder of a ballot accepting or rejecting the Plan.

*Chapter 7*: Chapter 7 of the United States Bankruptcy Code.

*Chapter 11*: Chapter 11 of the United States Bankruptcy Code.

*Claim*: shall mean:

a. a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

b. a right existing or deemed to exist as at the filing date as against the Debtor to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

*Confirmation of the Plan*: The entry by the Court of an Order Confirming the Plan in accordance with Chapter 11 of the United States Bankruptcy Code.

*Consummation of the Plan*: The commencement of payments provided for in the Plan.

*Court*: The United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, acting in this case.

*Current Obligations*: "Current Obligations" shall mean any accounts payable or other claims, liabilities or obligations of the Debtor which arose or accrued in the ordinary course of business between the filing date and the confirmation date (excluding interest, penalties, costs, assessments, or other charges incurred or accruing during the Chapter 11 case on any claim which arose before the filing date) which obligations of the Debtor arose or shall arise in the ordinary course of the Debtor's business between the filing date and the confirmation date.

*Debtor*: Vision Investment Group, Inc.

*Disclosure Statement*: "Disclosure Statement" shall mean the Disclosure Statement filed on behalf of the Debtor pursuant to §1125 of the Bankruptcy Code in aid of confirmation of the Plan, as may be amended, modified or supplemented.

*Disputed Claim*: "Disputed Claim" shall mean any claim or any portion thereof (including any fee claim but excluding all allowed claims):

      a.    which is scheduled in the Debtor's Amended Schedules as being disputed, contingent or unliquidated; or

      b.    as to which (i) a proof of claim has timely been filed, (ii) an objection has been timely filed by or on behalf of the Debtor or any other party in interest and not withdrawn, and (iii) no Final Order exists allowing or disallowing such claim or portion thereof.

In the event that any part of a claim is disputed, such claim in its entirety shall be deemed a disputed claim for purposes of distribution under the Plan, unless the Debtor and the holder thereof otherwise agree.

*Effective Date*: The date upon which the Order of Confirmation of the Plan becomes final and non-appealable.

*Filing Date*: May 11, 2018, the date of filing of the Debtor's Petition for Relief under Chapter 11.

*Final Order*: An order or judgment of the Court (i) as to which the time for appeal has expired and no appeal was filed timely or if an appeal has been filed no stay has been issued or (ii) from which any appeal has been finally determined or dismissed.

*Plan*: This Plan of Reorganization.

*Schedules*: "Schedules" shall mean the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

*With Interest*: This term shall mean an annual fixed percentage rate of six percent (6%) unless text indicates a different rate of interest.

## ***ARTICLE I.***

### ***Classification of Claims and Interest***

The claims and interests shall be classified as follows:

Class 1: Administrative Expenses. Class 1 is composed of the holders of all claims for costs and expenses of administration, including court costs, professional fees incurred by the Debtor and U.S. Trustee on and after the filing date, or otherwise incurred in connection with the preparation and filing of the Debtor's Petition herein, to the extent allowed and ordered paid by the Court pursuant to 11 U.S.C. §503(b)(2).

Class 2: U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance Allowed Secured Claim.

Class 3: The Coca Cola Company Allowed Secured Claim.

Class 4: Direct Capital Corporation Allowed Secured Claim.

Class 5: Bridge Funding Group, Inc. Allowed Secured Claim.

Class 6: First Merchants Bank Allowed Secured Claim.

Class 7: Americredit Financial Services, Inc. d/b/a GM Financial Allowed Secured Claim.

Class 8: Deere & Company d/b/a John Deere Financial Allowed Secured Claim.

Class 9: Priority Tax Claims.

Class 10: Unsecured Claims.

Class 11: Interest Holders.

## ARTICLE II.

### Claims Not Impaired Under the Plan

All Classes of claims are impaired by the Plan, except Classes 1, 2, 3 and 9.

## ARTICLE III.

### Treatment of Classes

Class 1: This Class will be paid in full thirty (30) days after Confirmation unless earlier payment is made pursuant to Court authorization or unless the holder of a claim in this Class agrees to an alternative payment arrangement with respect to its claim.

Provided, however, notwithstanding the foregoing, the Debtor, including the reorganized Debtor (or other responsible party) is responsible for payment of fees to the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6) for each quarter this case remains open until closed, dismissed or converted by court order. It is anticipated that this obligation will be in the sum of approximately $30,000.00 per quarter, but the actual fee is calculated based on the total of all disbursements or payments for each quarter, including post-Confirmation payments and operating expenses. All fees owed as of the date of Confirmation will be paid within 15 days of entry of the Order Confirming the Plan. After Confirmation, and so long as the case remains open, the Debtor (or other responsible party) shall serve upon the United States Trustee a financial report, in a format prescribed by the United States Trustee, by the 21st day of the month following each calendar quarter, for the preceding quarter, or any portion thereof and pay the quarterly fee no later than the last day of the month following each calendar quarter.

Class 2: U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance Allowed Secured Claim. Upon Confirmation of the Plan, this Class shall be permitted to exercise all of its rights with respect to its collateral as identified in Debtor's Schedules as equipment and leasehold improvements of

the Auburn 3, IN store as having a value of $8,300.00 and asserted by this Class in its Proof of Claim filed on May 25, 2018 as having a value of $11,000.00. That is, this Class may initiate any and all *in rem* collection and recovery actions it may have in connection with the aforesaid collateral. The deficiency claim of U.S. Bank d/b/a U.S. Bank Equipment Finance shall be included with and administered with Class 10 Unsecured Claims.

Class 3: The Coca Cola Company Allowed Secured Claim. The claim of this Class shall be paid in full pursuant to the terms of the prepetition agreements of the parties. The security interest of this Class shall continue in effect until the Allowed Claim of this Class has been paid in full.

Class 4: Direct Capital Corporation Allowed Secured Claim. The Allowed Secured Claim of this Class (in the amount as per its Proof of Claim filed on May 25, 2018) shall be paid in full, With Interest. Payments shall be monthly, commencing thirty (30) days after Confirmation of the Plan based upon a three-year (36 month) amortization. The security interest of this Class shall continue in effect to secure the aforesaid Allowed Secured Claim.

Class 5: Bridge Funding Group, Inc. Allowed Secured Claim. The Allowed Secured Claim of this Class, if any, shall be paid in full, With Interest. The Allowed Secured Claim of this Class shall be deemed to be $1,375,000.00.

Payment of the Allowed Secured Claim of this Class, including interest, shall continue upon Confirmation of the Plan, in the same manner and in the same monthly installments as provided in the parties' Stipulation for Adequate Protection and Plan Treatment of Bridge Funding, Inc.'s Allowed Claims (the Stipulation) (Doc. No. 272). By way of summary and not as limitation, as to treatment terms, said Stipulation provides that Vision will commence making immediately upon Court approval monthly adequate protection payments to Bridge in an amount to be determined by amortizing Bridge's allowed secured claim over ten ( 10) years at an interest rate of 6.5% fixed. Further, to the extent that Vision exceeds current projections with respect to the generation of cash ("Excess Cash"), such Excess Cash will be paid to Bridge and applied as a principal payment on a semiannual basis, i.e., if cash exceeds the amount stated in the three (3) year projection in the line item entitled "forecasted cash flow at the end of" as to the 7th and 13th periods and semiannually thereafter, such Excess Cash shall be paid to Bridge as a principal paydown, provided that all allowed attorney's fees of the debtor, either pre or post-confirmation, have been fully paid. In the event all allowed attorney's fees have not been fully paid to debtor's counsel, one-half of any such Excess Cash shall be paid as a principal paydown to Bridge, and one-half shall be applied to allowed attorney's fees of the debtor. Additionally, post-confirmation, continuing until the Bridge Claim has been paid in full, the reorganized debtor will prepare and provide to Bridge a combined management report prepared on a GAAP basis, P&L statement and balance sheet, all on a quarterly basis and tied to that quarter's franchisor-generated monthly combo reports and it shall use a qualified third-party CPA accounting firm acceptable to Bridge to provide a compilation statement and a consolidated balance sheet and P&L in accordance with GAAP. The remaining principal balance on the Allowed Secured Claim together with any unpaid interest thereon shall be due and payable on the sixty-first (61st) month following Confirmation of the Plan.

The security interest of this Class shall continue as security for the amount of the Allowed Secured Claim under the Plan. The deficiency claim of Bridge Funding Group, Inc., in the amount of $144,710.85, shall be included in, and administered with, Class 10 Unsecured Claims. The terms of the Stipulation shall be deemed incorporated into the Plan. And a copy is attached hereto.

Class 6: First Merchants Bank Allowed Secured Claim. The guaranty liability of this Class shall continue in effect. Any outstanding indebtedness shall be secured up to the value of this Class' security interest in the Debtor's assets. Said value shall be in the amount as agreed by the parties, or, in the event the parties cannot agree, as determined by the Court. The mortgage obligor (for whom the guaranty claim of the Class pertains) is presently current on its mortgage loan payments and will continue to make such payments. Accordingly, there will be no payments to this Class by the Debtor except in the event of a default on the guaranteed obligation. Further, payments thereon, With Interest, shall then commence monthly based upon a five (5) year amortization. The deficiency claim of First Merchants Bank shall be included in, and administered with, Class 10 Unsecured Claims.

Class 7: Americredit Financial Services, Inc. d/b/a GM Financial Allowed Secured Claim. The Allowed Secured Claim of this Class shall be paid in full pursuant to the prepetition agreements of the parties. Provided, however, that any pre-confirmation defaults shall be cured upon Confirmation of the Plan and all default charges to that date shall be deemed waived. The security interest of this Class shall continue in effect.

Class 8: Deere & Company d/b/a John Deere Financial Allowed Secured Claim. This Class shall be paid in full pursuant to the parties Stipulation Regarding Adequate Protection and Loan Contract – Security Agreement provided that any pre-confirmation defaults other than as provided in the Adequate Protection stipulation shall be deemed waived.

Class 9: Priority Tax Claims. This Class shall be paid in full, with interest accruing from and after Confirmation at the I.R.C. Rate in effect as of Confirmation of the Plan. Payments shall be on a quarterly basis based upon a five (5) year, straight amortization. The first quarterly installment shall be due ninety (90) days after Confirmation.

Class 10: Unsecured Claims. This Class shall include all claims not specifically included in Classes 1 through 9 including, but not limited to, the deficiency claims of the Classes 2, 5, and 6 and the claim of On Deck Capital (Proof of Claim No. 1). This Class shall neither have nor retain any lien on the Debtor's property. The Allowed Claims of this Class shall receive a pro rata distribution of an annual $2,000.00 payment to this Class for five (5) consecutive years, commencing with the first such annual payment one (1) year after Confirmation of the Plan.

Class 11: Interest Holders. All equity security interest in the Debtor shall be cancelled upon Confirmation of the Plan. The stock of the newly-reorganized Debtor shall be issued to James E. Miller II on the terms and conditions set forth in Article V., below.

## *ARTICLE IV.*

### ***Provisions for Treatment of Executory Contracts***

All scheduled executory contracts not rejected prior to the date of Confirmation are assumed.

## ARTICLE V.

### *Means for Execution of Plan*

The Plan is premised upon the following particulars:

1. The Debtor will remain in possession of the business, including all property, and will control the operation thereof.

2. The Debtor will devote full time and energy to its operations and the successful management thereof.

3. <u>Funding and Pledge to Maintain Operating, Leasehold and Franchisee Rights</u>. Based on current profit and market projections, set out more particularly in the Disclosure Statement filed herewith, the Debtor reasonably expects to generate enough net income to fund the future payments called for by the Plan. Additionally, in exchange for One Hundred Percent (100%) of the equity security interest (stock) in the newly-reorganized Vision Investment Group, Inc., James E. Miller, II shall pledge to maintain and combine his pertinent intangible rights to wit: both his personal Subway® Franchise Agreement rights and his personal rights and interests as Subtenant, each separately contracted as to each and every Subway® store operated by the Debtor with the rights of the Debtor. Moreover, and as further pledge to ensure payment of all Plan obligations, James E. Miller, II shall agree that, in any event of Plan failure, his franchise rights and sublease rights shall be kept together with each Vision Subway store for any purpose of liquidation or foreclosure of such stores as a going concern. Further, in the event of a liquidation, the entire going concern sale proceeds shall be applied to the Vision creditor claims before any apportionment to Mr. Miller. For more details of this pledge and its value, see the Disclosure Statement accompanying this Plan at page 5. thereof. This pledge shall not be construed to alter or expand any of James E. Miller, II's rights on the applicable Franchise Agreements or Sublease agreements and all rights of Subway®, Doctor's Associates, Inc. and Subway Real Estate Corporation, in, to, and arising out of such agreements shall continue in effect.

4. Jim and Becky Miller shall receive only salary compensation post-confirmation as currently being paid, but may also receive tax payment distributions in the amount needed to cover any pass-through taxes on account of Vision profits from post-confirmation operations and principal payments. This restriction shall terminate post-confirmation when the Bridge Claim has been fully paid.

5. After Confirmation of this Plan, the Debtor may, with Court approval and so long as it does not materially or adversely affect the interest of the creditors, remedy any defect or inconsistency in the Plan as may be necessary to carry out the purposes and effect of the Plan.

6. Any clause, within this Plan that is determined to be unconstitutional, illegal, or otherwise improper or against public policy, shall be severed and stricken from the Plan and shall not invalidate or otherwise render void the remainder of the Plan.

7. Unless another date is provided for under this Plan or by the Bankruptcy Court, all objections to claims shall be filed before one-hundred twenty (120) days after Confirmation, without prejudice to the extension of such period, upon proper motion therefor. The Debtor shall serve a copy of each such objection upon the holder of the claim to which it pertains in accordance with Bankruptcy Rule 3007.

8. The Court will retain jurisdiction in this case after Confirmation to rule on objections to claims, as well as other items necessary to the administration of the Plan.

9. Where the Plan provides for payments to be made on specified dates, a fifteen (15) day period of grace will be allowed.

10. The Debtor may execute and deliver promissory notes in satisfaction of the obligations set forth in the Plan. Said promissory Notes shall not vary the terms of the Plan unless mutually agreed and approved.

## ARTICLE VI.

### Request for Confirmation Under 11 U.S.C. §1129(b)

In the event any impaired class of claims or interests does not accept the Plan, the Debtor requests the Court confirm the Plan under the provisions of 11 U.S.C. §1129(b).

## ARTICLE VII.

### Reservation of Rights

1. Notwithstanding any other provision of the Plan or confirmation of the Plan, disputed claims and claims subject to set-off and/or counterclaim shall be paid only upon their allowance by the Court and the Debtor reserves the right to object to any claim not previously settled.

2. Notwithstanding the confirmation of the Plan, the Debtor shall retain and remain in possession of the causes of action as it may have under the United States Bankruptcy Code or under otherwise applicable Federal or State law, and shall be authorized to prosecute such actions as fully and completely as if the same were being prosecuted by a trustee in bankruptcy or otherwise. Additionally, the Debtor shall retain the right to pursue all other claims that it has which accrue to the Debtor whether or not pending in federal, state or other court. Notwithstanding the above, any claims for recovery arising under the Bankruptcy Code ("Bankruptcy Claims") such as preferences or fraudulent conveyances, must be commenced by the time prescribed in Article X. In connection with (i) the review for the existence of or (ii) the prosecution of any Bankruptcy claims, the Debtor agrees that financial information, documents, and books and records relating to

specific transactions will be made available to counsel for the Creditors' Committee for review and investigation.

3. Notwithstanding the confirmation of the Plan, the Debtor shall retain the right to litigate and/or dispute the validity, priority, extent and/or amount of any alleged secured claim not previously settled, whether or not addressed specifically in the Plan, and shall retain the right to litigate and/or dispute the extent and validity of the claims of any unsecured creditor, except as otherwise provided in the Plan.

## *ARTICLE VIII.*

### *Jurisdiction of the Court*

The Court will retain exclusive jurisdiction over the Debtor's Chapter 11 reorganization proceeding until consummation of the Plan and for various purposes including, but not limited to, the following:

1. For classification or re-classification of the claims of any creditor and the examination or re-examination of any claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to creditors' claims. The failure by the Debtor to object to, dispute, or to examine any claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's right to subsequently object to, dispute, or re-examine the claim in whole or in part.

2. For determination of all questions and disputes regarding title to the assets of the Debtor's estate, determination of all causes of action, controversies, disputes or conflicts, whether or not subject to an action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to, any rights of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code or otherwise. In addition, the Court's power shall include, but not be limited to, the power to hear, determine and approve settlements of any such litigation; hear, determine and allow the payment of expenses incidental to such claims; and to make such other orders and determinations as may be reasonable and proper in the premises.

3. For the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan.

4. To consider any matters brought before the Court by an interested party necessary to carry out the terms, conditions and intent of the Plan.

5. For the modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

6. To enforce and interpret the terms and conditions of the Plan.

7. To enter any Order, including but not limited to injunctions, to implement the terms of the Plan or to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary or proper.

8. To determine whether a default has occurred under the provisions of the Plan, and to make such Orders as the Court deems necessary to cure such default or to enforce the provisions of the Plan, or as the Court otherwise deems appropriate and necessary.

9. To determine the allowance of claims or interest and the distribution and payment of claims or interests.

10. To enter an Order concluding and terminating this bankruptcy case.

## *ARTICLE IX.*

### *Discharge*

1. <u>Discharge</u>. Except as otherwise provided in the Plan or Confirmation Order, the occurrence of confirmation and the issuance of a Confirmation Order shall operate as a discharge, pursuant to §1141(d)(1) of the Bankruptcy Code, effective as of the date of confirmation of any and all debts (as such term is defined in §101(12) of the Bankruptcy Code) or claims against the Debtor that arose at any time before the confirmation date, including, but not limited to, all principal and interest, whether accrued before, on or after the respective filing date. On the date of confirmation of the Plan, as to every discharged debt and claim, the creditor that held such debt or claim shall be permanently precluded from asserting against the Debtor, or against any of the assets, any other or future claim based upon any document, instrument or act, omission, transaction or other activity of any kind or nature that occurred prior to the confirmation date. Without limiting the generality of the foregoing, except for payment or deposit by the Debtor of all amounts due to be paid and other property to be distributed pursuant to the provisions of this Plan, all debt, including any debt of a kind specified in §502(g), 502(h) or 502(i) of the Bankruptcy Code is discharged, to the fullest extent permitted in accordance with §1141(d)(1)(A) of the Bankruptcy Code. Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any way, the discharge granted upon confirmation of the Plan in accordance with §1141 of the Bankruptcy Code.

2. <u>(Injunction)</u>.

    a. effective on the confirmation date, all persons who have held, hold or may hold claims or allowed claims, or who have held, hold or may hold interests, shall be enjoined from taking any of the following actions against or affecting the Debtor or the assets of the Debtor (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order or with respect to such claims or interests):

    i.    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, or the assets of the Debtor, or any direct or indirect successor in interest to the Debtor, or any assets of any such transferee or successor;

    ii.    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly, any judgment, award, decree or order against the Debtor or the assets of the Debtor, or any direct or indirect successor in interest to the Debtor, or any assets of any such transferee or successor;

    iii.    creating, perfecting otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtor or any direct or indirect successor in interest to any of the Debtor, or any assets of any such transferee or successor other than as contemplated by the Plan;

    iv.    asserting any set-off-right of subordination or recoupment of any kind, directly or indirectly against any obligation due the Debtor or the assets of the Debtor, or any direct or indirect transferee of any assets of, or successors in interest to the Debtor; and

    v.    proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

## ARTICLE X.

### Miscellaneous Provisions

1. <u>Avoidance Action</u>.

The Debtor may, not later than one hundred twenty (120) days following the Confirmation Date, commence any action in the Bankruptcy Court for the recovery of bankruptcy claims.

2. <u>Amounts of Claims</u>.

All references to claims and amounts of claims refer to the amount of the claim allowed by operation of law, Final Order of the Bankruptcy Court or this Plan, <u>provided</u>, <u>however</u>, that claims which have been objected to and which have not been allowed or disallowed prior to the ballot date shall be voted and counted to the extent fixed and in such amount as estimated by or fixed by the Bankruptcy Court. The Debtor and other interested parties reserve the right, both before and after the confirmation date, to object to claims so as to have the Court determine the allowed amount of such claims in respect of this Plan.

3. No Interest.

Except as expressly stated in this Plan, or directed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any claim subsequent to the filing date.

4. No Attorneys' Fees.

No attorneys' fees will be paid with respect to the assertion against the Debtor on any claim of creditors except as may otherwise be identified herein by specific dollar amount or directed by the Confirmation Order or other Final Order of the Bankruptcy Court.

5. Exculpation.

Debtor, and the Debtor's employees, attorneys, accountants, advisors or agents shall not have or incur any liability to any holder for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan except for gross negligence or willful misconduct.

6. Post-Confirmation Effect of Evidences of Claims or Interests.

Except as otherwise provided in the Plan, effective upon the confirmation date, all evidences of claims or interests shall represent only the right to participate in the distributions, if any, contemplated by the Plan. No security interests except as specifically provided in the Plan or Order Confirming the Plan shall continue in or against the property of the Debtor.

7. No Prepayment Penalties.

Notwithstanding any provision of the Plan or any obligation or loan document or agreement adopted by the Plan, there shall be no prepayment penalties.

8. Governing Law.

Except to the extent the Bankruptcy Code or Federal Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana, without giving effect to the principles of conflicts of law thereof.

9. Headings.

The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

10. <u>Notices</u>.

All notices, requests, elections or demands in connection with this Plan shall be in writing and shall be delivered by personal or overnight delivery service or courier, or by registered or certified mail, return receipt requested to:

Vision Investment Group, Inc.
c/o James E. Miller, II, President
P.O. Box 415
Bluffton, IN 46714

with copies to:

Daniel J. Skekloff, Esq.
Scot T. Skekloff, Esq.
HALLER & COLVIN, P.C.
444 E. Main Street
Fort Wayne, IN 46802

11. <u>Successors and Assigns</u>.

The rights, benefits and obligations of any person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heirs, executor, administrators, representatives, successors or assigns of such person.

VISION INVESTMENT GROUP, INC.

_____
James E. Miller, II, President

## CERTIFICATE OF SERVICE

    The undersigned, who is duly admitted to practice in the State of Indiana and before the Court, hereby certifies that a copy of the above and foregoing was transmitted electronically through the Bankruptcy Court's ECF System, on February 20, 2019, to the following:

Leonard W. Copeland
Nancy J. Gargula
Office of the United States Trustee
One Michiana Square, Suite 555
100 E. Wayne Street
South Bend, IN 46601

Michael P. O'Hara
Thomas P. Yoder
BARRETT McNAGNY LLP
215 East Berry Street
Fort Wayne, IN 46801
Attorneys for First Merchants Bank

Arthur H. Rice
RICE PUGATCH ROBINSON STORFER & COHEN, PLLC
101 NE 3rd Avenue, Suite 1800
Fort Lauderdale, FL 33301
Attorney for Bridge Funding Group, Inc.

Kenneth D. Peters
DRESSLER & PETERS LLC
70 W. Hubbard Street, Suite 200
Chicago, IL 60654
Attorney for Direct Capital Corporation

Harley K. Means
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204-5125
Attorney for Ford Motor Credit Company LLC

    The undersigned further certifies that a copy of the above and foregoing was sent by first class United States mail, postage prepaid on February 20, 2019, to the following:

Vision Investment Group, Inc.
c/o James E. Miller, II, President
P.O. Box 415
Bluffton, IN 46714

Americredit Financial Services, Inc. dba GM Financial
PO Box 183853
Arlington, TX 76096

                /s/ Daniel J. Skekloff
                Daniel J. Skekloff (#146-02)

# Exhibit "A"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

IN THE MATTER OF:                    CASE NO. 18-10864

VISION INVESTMENT GROUP, INC.        Chapter 11

Debtor.

### STIPULATION FOR ADEQUATE PROTECTION PAYMENTS AND PLAN TREATMENT OF BRIDGE FUNDING GROUP, INC.'S ALLOWED CLAIMS

Vision Investment Group, Inc. ("Vision") and Bridge Funding Group, Inc. f/k/a United Capital Business Lending, Inc. ("Bridge") enter into this stipulation regarding the payment of adequate protection payments payable by Vision to Bridge as follows:

WHEREAS, Vision filed a Petition under Chapter 11 of the Bankruptcy Code on or about May 11, 2018, Case No. 18-10864;

WHEREAS, Bridge filed an adversary complaint (the "Complaint") styled *Bridge Funding Group, Inc. f/k/a United Capital Business Lending, Inc., Plaintiff v. Vision Investment Group, Inc.; First Merchants Bank f/k/a iAB Bank f/k/a Markle Bank; US Bank Equipment Finance; Corporation Service Company; and, The Coca Cola Company, Defendants*, Adversary No. 18-01038 to determine the extent, validity and priority of Bridge's lien on the Debtor's property;

WHEREAS, Vision filed its Answer to the Complaint on or about July 11, 2018 wherein it disputes the scope and value of Bridge's lien;

WHEREAS, Bridge filed its proof of claim ("POC"), Claim Number 13, asserting that it is an oversecured creditor, subject only to the final judgments entered in the adversary proceeding identified above with respect to the liens asserted by First Merchants Bank f/k/a iAB Bank f/k/a Markle Bank, US Bank Equipment Finance, Corporation Service Company and The Coca Cola Company (the "Defendants");

WHEREAS, the Court has approved partial final judgments as between Bridge and each of the Defendants named in the Complaint, except for Vision;

WHEREAS, Vision and Bridge desire to resolve all of the issues raised in the Complaint as between Bridge and Vision, and to determine Bridge's claim as set forth in the POC; and,

WHEREAS, the parties recognize that the most cost-efficient approach to resolving their disputes involves both resolution of adequate protection issues, as well as plan treatment for Bridge's claim.

32858/000/00865640-1 SMB

NOW, THEREFORE, the parties do hereby stipulate and agree as follows:

1. Bridge shall be deemed to hold in the Vision Chapter 11 bankruptcy, as well as in any bankruptcy case filed by James E. Miller, II, an allowed, fully-secured claim in the amount of $1,375,000.00 (the "Bridge Claim"). The Bridge Claim shall be deemed to include any 11 U.S.C. § 506(b) claim which Bridge may have in the Vision Chapter 11. It is noted here that, subject to the various Agreed Partial Final Judgments entered as to each, such lien priority is inferior to that of U.S. Bank Equipment Finance, United Capital Business Lending, Inc. and The Coca-Cola Company and is superior to that of First Merchants Bank.

2. Vision will pay Bridge it's allowed secured claim as follows:

   a. Vision will commence making immediately upon Court approval monthly adequate protection payments to Bridge in an amount to be determined by amortizing Bridge's allowed secured claim over ten (10) years at an interest rate of 6.5% fixed;

   b. The payments set forth in the preceding paragraph shall continue post-confirmation as the agreed plan treatment for Bridge's allowed secured claim, provided, however that the Plan shall include a five (5) year balloon payment provision;

   c. To the extent that Vision exceeds current projections with respect to the generation of cash ("Excess Cash"), such Excess Cash will be paid to Bridge and applied as a principal payment on a semiannual basis, i.e., if cash exceeds the amount stated in the three (3) year projection in the line item entitled "forecasted cash flow at the end of" as to the 7th and 13th periods and semiannually thereafter, such Excess Cash shall be paid to Bridge as a principal paydown, provided that all allowed attorney's fees of the debtor, either pre or post-confirmation, have been fully paid. In the event all allowed attorney's fees have not been fully paid to debtor's counsel, one-half of any such Excess Cash shall be paid as a principal paydown to Bridge, and one-half shall be applied to allowed attorney's fees of the debtor; and,

   d. Subject to Vision otherwise confirming a Chapter 11 reorganization plan, Vision shall provide in any such plan that the payments set forth above in the preceding paragraph constitute the treatment of the allowed secured claim of Bridge.

3. Jim and Becky Miller shall receive only salary compensation post-confirmation as currently being paid, but may also receive tax payment distributions in the amount needed to cover any pass-through taxes on account of Vision profits from post-confirmation operations and

32858/000/00865640-1 SMB                    2

principal payments. This restriction shall terminate post-confirmation when the Bridge Claim has been fully paid.

4. Bruce Miller will receive no compensation, distributions or payments other than whatever dividend is paid to allowed general unsecured nonpriority creditors under the plan. This provision and the provision in paragraph 3 shall remain in full force and effect until such time as Bridge's allowed secured claim has been paid in full, including in any liquidation of the stores on account of a default pre or post-confirmation.

5. Post-confirmation, continuing until the Bridge Claim has been paid in full, the reorganized debtor will prepare and provide to Bridge a combined management report prepared on a GAAP basis, P&L statement and balance sheet, all on a quarterly basis and tied to that quarter's franchisor-generated monthly combo reports.

6. Post-confirmation, continuing until the Bridge Claim has been paid in full, Vision shall use a qualified third-party CPA accounting firm acceptable to Bridge to provide a compilation statement and a consolidated balance sheet and P&L in accordance with GAAP.

7. All of the terms set forth above in paragraphs 1 through 6 are conditioned and contingent upon Vision confirming a Chapter 11 plan of reorganization that provides for the treatment of Bridge's allowed secured claim as set forth in such paragraphs. Recognizing that there is a possibility that Vision will not confirm a Chapter 11 reorganization plan or that such plan, for reasons outside of the control of either Bridge or Vision, may not permit such treatment as set forth above or that the case may be converted and a trustee appointed, or the case may be dismissed, then in that event neither party shall be bound with respect to any of the terms contained herein.

8. Plan treatment of Bridge's allowed secured claim will include an agreement by Jim Miller to permit Bridge, in the event of any default by Vision post-confirmation, to foreclose on and sell, subject only to the rights of Subway to approve any purchaser, with such approval not to be unreasonably withheld, all rights granted under the franchise agreements whether held by Jim Miller individually or assigned to Vision, and all rights under the subleases whether such rights are held by Jim Miller individually or by Vision as a single economic unit, it being the intent of the parties to maximize the value in any such sale, whether through foreclosure or by voluntary surrender of the collateral.

9. Except as explicitly or implicitly modified herein, all existing loan documents, including Jim Miller's collateralized guarantee, shall remain in full force and effect.

10. Provided that Vision successfully obtains an Order from the Court permitting the adequate protection payments as set forth above, as well as the plan treatment of Bridge's allowed secured claim, then in that event Bridge will vote its claim[s] in favor of Vision's plan of

32858/000/00865640-1 SMB            3

reorganization and Jim Miller's plan of reorganization in the event Miller should find it necessary to file Chapter 11.

11. Bridge shall be deemed to also hold an allowed unsecured claim (the "Bridge Unsecured Claim") in the amount of $144,710.85. This claim shall consist of all interest accrued, but unpaid in the Chapter 11.

12. Upon Court approval of this Stipulation, the aforesaid Complaint, Adversary Proceeding No. 18-01038, shall be deemed resolved as to Defendant, Vision Investment Group, Inc.

13. Court Approval. This Stipulation is subject to and conditioned upon approval by the Court. Each of the parties agrees to make every reasonable effort to obtain such approval. Upon execution of the Stipulation by the parties, the Debtor shall give notice of this Stipulation and the hearing on the same to Bridge, the Office of the United States Trustee, and all other creditors entitled to such notice in accordance with Rule 4001(d) of the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the Court.

SO AGREED this ___9___ day of January, 2019 by and between:

| VISION INVESTMENT GROUP, INC. | BRIDGE FUNDING GROUP, INC. f/k/a UNITED CAPITAL BUSINESS LENDING, INC. |
|---|---|
| _____ | _____ |
| Daniel J. Skekloff (#146/02) | Arthur Halsey Rice (Florida Bar No. 224723) |
| HALLER & COLVIN, PC | RICE PUGATCH ROBINSON STORFER & COHEN, PLLC |
| 444 E. Main Street | 101 Northeast Third Avenue, Suite 1800 |
| Fort Wayne, IN 46802 | Fort Lauderdale, FL 33301 |
| Telephone: (260) 426-0444 | Telephone: (305) 379-3121 |
| Facsimile: (260) 422-0274 | Facsimile: (954) 462-4300 |
| E-mail: dskekloff@hallercolvin.com | Attorney for Plaintiff |
| Attorney for Vision Investment Group, Inc. | |